UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**OUTSOURCING FACILITIES ASSOCIATION, ET AL.,**

   Plaintiffs,

v.                               No. 4:24-cv-00953-P

**UNITED STATES FOOD AND DRUG ADMINISTRATION, ET AL.,**

   Defendants.

# ORDER

Before the Court is Plaintiffs' Motion for Injunction Pending Appeal. ECF No. 117. The Court is increasingly exasperated by Plaintiffs' attempts to dictate to the undersigned how to manage this case. The Court does not have the luxury to give increased attention to certain cases just because a party to the case thinks its case is more important than the rest.[1] It is worth noting that, since October 2023, the undersigned has opened and closed 232 and 307 cases respectively. Both of these totals are the second most of the sixteen active judges in the Northern District of Texas. The only judge who opened and closed more cases during this time was fellow Fort Worth judge, Judge Reed O'Connor. Along with managing its hundreds of other cases, since ruling on the motion for preliminary injunction on March 5, 2025, the Court has held several hearings, sentenced over a dozen criminal defendants, conducted a weeklong jury trial, and is preparing for another in the next few days. A recent analysis performed by Judge O'Connor of the overall number of filings in the Fort Worth Division determined that, on

---

[1] "The good judge takes equal pains with every case no matter how humble; he knows that important cases and unimportant cases do not exist, for injustice is not one of those potions which, though harmful when taken in large doses, yet when taken in small doses may produce a salutary effect. Injustice is a dangerous poison even in doses of homeopathic proportions." *Judge Piero Calamandrei quoted in* HANDBOOK FOR JUDGES 158 (Donald K. Carroll ed. 1961)

average, the Fort Worth Division handles 2-3 times the cases of the Dallas Division. *X Corp. v. Media Matters for Am.*, No. 4:23-CV-01175-O, 2024 WL 1895255, at *7 (N.D. Tex. Apr. 26, 2024) (O'Connor, J.); *see also* ECF No. 51. Like Judge O'Connor in *X Corp.*, the Court does not recite these statistics to complain. Rather, the Court cites these statistics to show that while it has moved with alacrity it cannot allow the Parties to dictate the management of this case.

The Court has been clear from the beginning how it intended to proceed with this case. Understanding the need for expedience, the undersigned offered to move straight to the summary judgment stage so that the Parties would only have to brief the issues once before appealing to the Fifth Circuit. However, the Parties did not wish to proceed that way. Consequently, the Court informed the Parties at the hearing, and in the order setting the briefing schedule on the preliminary injunction, that it would consider the preliminary injunction with all haste and would subsequently set the Parties on an expedited summary judgment briefing schedule. The Court has been true to its word and has done just that. *See* ECF No. 100 (ruling on the motion for preliminary injunction eight days after it was fully briefed); ECF No. 102 (setting an expedited briefing schedule).

Plaintiffs, as is their right, filed an interlocutory appeal of the Court's order denying their motion for preliminary injunction. ECF No. 103. At the Fifth Circuit, Plaintiffs moved for an expedited ruling on their appeal. Subsequent to the appeal, the Government Defendants moved this Court to stay the summary judgment pending the appeal. ECF No. 104. The Court, adhering to its word that it would move quickly on the summary judgment, denied that motion. ECF No. 106. Thereafter, Plaintiffs ***voluntarily*** dropped their motion to expedite the appeal at the Fifth Circuit and moved this Court to convert its order on the motion for preliminary injunction into a judgment on the merits.

Because the legal standard and the evidence available to the Court at the summary judgment stage is patently different than the preliminary injunction stage, the Court ordered the Parties to submit evidence from the record that they would wish the Court to see prior to the entry of a judgment on the merits. ECF No. 109. The Parties did

that. ECF Nos. 110–115. In addition to the record excerpts, Plaintiffs attached a quasi-brief, explaining their major points of contention with the Court's order on their preliminary injunction and why they feel the attached evidence supports their positions. ECF No. 110. The Court, in reviewing said brief, found that there were questions raised by the evidence supplied by Plaintiffs that it wished to give Defendants a chance to answer prior to entering a judgment on the merits. Thus, the Court denied the motion to convert its prior order into a judgment on the merits and placed the Parties on a briefing schedule. ECF No. 119. Plaintiffs now ask the Court to enter an injunction pending their appeal. ECF No. 117. Plaintiffs' Motion is **DENIED**.

General George S. Patton, Jr. famously said: "Never tell people *how* to do things. Tell them *what* to do and they will surprise you with their ingenuity." General George S. Patton, Jr., *War as I Knew It* 275 (1947). Parties should not be allowed to manipulate the court system to order trial judges "how," "what," and "when" to rule. In this case, Plaintiffs are attempting to do just that.[2] Should the Fifth Circuit instruct the

---

[2]The Court is deeply disturbed by this wholly inappropriate Motion and Plaintiffs apparent lack of regard for the Court's ability to effectively manage its own docket. *See Prudhomme v. Teneco Oil Co.*, 955 F.2d 390, 392 (5th Cir. 1992) (recognizing that district courts have broad discretion to manage their dockets). The Court is also deeply concerned that Plaintiffs' counsel are not abiding by their obligations under the Texas Lawyer's Creed, which requires lawyers to "be considerate of the time constraints and pressures imposed upon the Court, Court staff and counsel in efforts to administer justice and resolve disputes," TEXAS LAWYER'S CREED—A MANDATE FOR PROFESSIONALISM, reprinted in Texas Rules of Court 739 (West 2020), and under *Dondi Properties Corp. v. Commerce Savings & Loan Assoc.*, which states that "[a] lawyer owes, to the judiciary, candor, diligence and utmost respect." 121 F.R.D. 284, 287 (N.D. Tex. 1988).

During the remaining pendency of this case, counsel should be particularly mindful of their obligations under the Texas Lawyer's Creed, which states that attorneys: (1) "will always recognize that the position of judge is the symbol of both the judicial system and administration of justice"; (2) "will refrain from conduct that degrades this symbol"; (3) "will conduct myself in Court in a professional manner and demonstrate my respect for the Court and the law"; (4) "will treat counsel, opposing parties, the Court, and members of the Court staff with courtesy and civility"; (5) "will not engage in any conduct which offends the dignity and decorum of proceedings"; (6) "will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities to gain

undersigned to manage this case differently, the Court will accept the rulings of Fifth Circuit in this case without passion or prejudice and will apply its guidance to the utmost of its ability. Until then this case shall proceed in accordance with the Court's prior order.

**SO ORDERED** on this **26th day of March 2025.**

_____
MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

---

an advantage"; (7) "will respect the rulings of the Court"; and (8) "will give the issues in controversy deliberate, impartial and studied analysis and consideration." Texas Lawyer's Creed—A Mandate for Professionalism, reprinted in TEXAS RULES OF COURT 763–65 (West 2019); *cf.* GEORGE WASHINGTON, quoted in GREAT QUOTES FROM GREAT LEADERS 65 (compiled by Peggy Anderson (1990)) ("Strive not with your superiors in argument, but always submit your judgment to others with modesty.").

4